Good morning. May it please the court. My name is Robin Ernest and I represent appellant Dwight Jenkins on appeal from the District Court's denial of his motion for compassionate release. Mr. Jenkins, who only has three and a half years remaining on his 10-year sentence for victimless offenses, sought release to home confinement because he suffers from debilitating medical conditions the CDC recognizes place him at risk for severe illness or death from the Mr. Jenkins motion argued how he suffers from the autoimmune disorder Graves disease and is profoundly disabled. Missing part of the bone in its right leg, Mr. Jenkins suffers from severe chronic ulcerative infections which often causes temperature to spike to over a hundred degrees and that since 2019 he now walks with the aid of a four-wheel Walker. He is not a gang member, he has never been incarcerated before, and his conditions merit compassionate release. However, because the District Court's sentence one sentence explanation and its denial order does not reveal whether it considered Mr. Jenkins arguments in mitigation or sets forth the District Court's particularized basis for his denial, this order is procedurally unreasonable and remand is warranted. Accordingly, Mr. Jenkins appeal presents the following two arguments. First, that the District Court's November 30th five-page substantive memo which it filed a week before Mr. Jenkins timely filed notice of appeal and three weeks after its own denial order is unreviewable because the District Court was divested of jurisdiction by that time. Also, that second the District Court's November 10th denial order by which it merely checked the box denied on a court form and included the single sentence explanation that the 18 U.S.C. 5535 factors do not favor release is procedurally unreasonable for meaningful appellate review. On the first issue, controlling case law counsels against this court's review of the District Court's November 30th five-page memo of reasons because Mr. I'm sorry because Mr. Jenkins November 23rd notice of appeal from the court's November 10th order had divested the District Court of jurisdiction. Wait, counsel, counsel, the District Court wrote the memorandum, signed and dated it on November 10th, so I don't understand why when this thing was docketed would have anything to do with the District Court's jurisdiction to exercise judicial power by deciding this case and writing that memorandum. The clerk doesn't need jurisdiction to put something on the docket. The judge needs jurisdiction to decide a case, but this case was decided on November 10th. The final order was filed on the November 10th and that is the order that Mr. Jenkins filed a notice of appeal concerning. The memorandum was signed and dated on November 10th. Unless you're here to say that the District Court post dated what was actually a post hoc rationale, which I assume you're not doing, we have to assume that that memorandum was prepared and signed on November 10th. So I guess I don't see a problem here that everything substantive was done by the District Court when the District Court had jurisdiction. However, the case law speaks in terms of when the District Court makes a decision when it has jurisdiction to do so, but for some reason that decision is not released until later. That the releasing of the decision is a jurisdictionally significant event and has to be done when the court, before the appeal, I'm sorry, before the divestiture rule kicks in. Because I could not find any cases saying that. The Harvey case, there was no indication that that memorandum was written before the District Court was divested of jurisdiction. It wasn't written until, sorry, that one looked like a post hoc, post jurisdiction shifting memorandum. This one doesn't. The fact that it wasn't filed until 20 days after the initial order and filed after the in this case is what previous case law has relied upon in determining divestiture by the District Court. It is the note, it is the filing of the Notice of Appeal and in this case the District Court, even on November 25th, docketed that it was transferring the case to the Court of Appeals and that was five days before the District Court filed its explanatory memorandum on November the 30th. What happened in that intervening time... So tell me what the problem of that is. If you file a Notice of Appeal, divest of jurisdiction, what would be the problem of having the District Court file something that merely aids the appellate process? So aids in the appellate process has been narrowly interpreted to mean when the District Court submits an oral decision and then later, in order to aid the appellate court, files a written memorandum or written memorialization of that oral order and does so within just a few days of the initial order. So what's the difference? I mean if you don't have jurisdiction there, why would you have jurisdiction here? I wouldn't have it here. The difference is that in the latter case, all the District Court is doing is putting in writing, putting in a written form, which is more convenient for the Court of Appeals, what it stated orally. In this instance, we have a five-page substantive memorandum where the District Court clearly lays out its findings of facts and its statements of law relative to that. But aside from your jurisdictional concerns, then what is the problem with that? When we're looking at the jurisdiction, if it's something that helps the appellate process and even we send it back, what do we send it back for? It goes right back, he refiles it and comes right back to us. In sending it back, the court would be able to take in considerations regarding Mr. Jenkins' health since that time. He was only ten days before the court issued its November 10th denial of his motion for compassionate relief that in its reply, Mr. Jenkins filed notice that he in fact had contracted the coronavirus. But counsel, the District Court agreed that these were extraordinary and compelling circumstances. So none of that would really affect the decision because where the District Court disagreed with you was under the 3553A factors. Notwithstanding the fact that health reasons do merit this relief, I can't do it under 3553A. So that also includes as a relevant factor consideration of whether or not the applicant inmate's needs can be met in the BOP, what their medical needs are and whether they can be aptly met in the incarceration. And that would bring in consideration of whether with his coronavirus condition, the BOP remains able to meet the medical needs of Mr. Jenkins. So they would be considered in even though they weren't done so in the way that the court set forth its memorandum of November 30th. But the real... When did he contract the COVID? October 30th. On October 30th, the appellate filed a supplement. October 3rd of 2020? Yes, sir. Yes, your honor. And so he has survived that? Yes, your honor. He has survived COVID, but... So then the evidence would show he survived COVID. He's now a year away from it. So even if we sent it back for to look at where how it changes, how's that gonna... Where is anything that's going to help your case? His medical records indicate that he is suffering from late COVID symptoms. So he does have increased severe illness because of his CDC recognized Graves disease condition. It affects his autoimmune system and affects his ability to recover from diseases and infections. So a coronavirus was particularly hard for this inmate. In addition, since he only has three and a Then the release, as he requested in his compassionate release motions, would allow him to have home detention and to be under his mother's health care where he could get the appropriate care for his medical needs, which currently are unavailable at Fort Dix where he is housed. Fort Dix, as he... So why come he can't file a new motion for compassionate release then? You got some additional stuff here that's different from the initial determination. That is a possibility. However, it is the appellate's position that when he filed his notice of appeal that the district court was divested of jurisdiction to file its substantive memorandum on the 30th. I understand that's your position in terms of the jurisdictional issue here, but I'm the case, you've articulated information that's different from what initially was there. You know, the post COVID situation is not a pre COVID situation. It's not the exposure to it. I don't know the science of it. Won't go into that too much. But the basis is he's had it and probably has had all the vaccinations and everything to go with it and all that other that goes with it. But you're saying there are things that now, which to me wouldn't be the basis for what is before us, but would be something new. So why wouldn't he just file a new one if he wants his mother to take care of him at home for these post COVID situations? Pursuing his appeal in this case does not foreclose his ability to file another motion for compassionate release. I understand that, but you understand my question. I'm not trying to be argumentative, but there's one thing to appeal and to get a review. There's another thing to get him out because he's entitled to it. And you're saying there's this additional information. I don't know what precludes you from doing it. Or is there something that precludes you from doing it? There's nothing technically that precludes him from filing a second motion for compassionate release. Your honor is exactly right on that count. He would be filing before the same judge and it is not on his medical condition that the It is on the 3553 factors that she considered relative to the history and characteristics of his offense and also whether or not his release would be public safety in the interest of the public safety. And to those factors, since he continues to be incarcerated, there has not been much change that he would be able to argue. So the course that he feels compelled to pursue is on his initial compassionate release motion, which is before the court in this instance. I'm sorry. Go ahead, please. No, you go. You go, Judge Wynn. Go ahead. Chief has a lead here. Before you leave, and we're going to get to Judge Harris, Judge Wynn too if he has another one. But would you help me with this scenario? Let's say we agree with you completely that the district court had no jurisdiction and as a result, we cannot consider the memorandum of opinion that was filed 20 days later. How would this play out in terms of the form? We're left with the form order. Do you agree with that? Correct, Your Honor. Yes. Under our precedent in High, what would that do? What does High say that you can go straight to the 3553 factor that you considered and said it was considered? Is it because we don't know what part of it impressed the court one way or the other? But it does evidence that they did consider, and based on those considerations, under High, isn't that alone, it's enough? Particularly since you were granted the COVID, the extraordinary, compelling reason, why wouldn't that be enough under High? So Appellant agrees with you, Your Honor, that High is controlling here. High, in fact, is the standard for what is sufficient for a denial for compassionate release motion. And in doing so, it established that the critical inquiry is whether the district court set forth enough for meaningful appellate review under the particularized record. And the argument here is that under this particularized record, there's a lot of factors that are in mitigation of his motion for compassionate release, which should have been considered by the court, or at least should have been identified for this court to acknowledge or review its consideration. That was done in High, but was not done here. In the High court, the situation was that the district court set forth a full paragraph in which it talked about the facts related to the 3553 factors and why, if I may continue, and why those facts were sufficient. For example, it discussed the fact that defendant had just recently been sentenced by the same judge a year before, that the defendant was a recidivist for a violent crime that he committed a little more than a year before and for which he'd been incarcerated for 20 years. It also said that in light of these factors, that the sentencing factors from its initial sentencing had not changed and that the sentence imposed, therefore, remains sufficient but not greater than what's necessary to advance the goals of 3553A. So I want to tag on to Chief Judge Gregor's question. If I understand it, where it's going, if we consider, if we do consider that five-page memo, that's sufficient on the memo, aren't we still bound by the Chavez-Metz case? Chavez is different in that it did not, it was not a review of the compassionate release statute under 3582 C1A, but it was a review of the statute for reducing sentences under 3582 C2, which is basically a routine run-of-the-mill guidelines analysis, as this court found in McCoy. So there are differences both in intent from the compassionate release statutory provisions that are not under C2, and that is the distinguishing feature largely in Chavez. Otherwise, it would be sufficient, but here, because in its motion and in his reply, Jenkins put forth so many facts in mitigation for reduction of his sentences, those facts should be considered are how the court decided not to consider those factors should be included in its in its order of denial and was not done here. Judge Harris, did you have a question? I'm fine, thank you. Sure, okay. Ms. Ernest, you're about to say something or finish up? I see that my time has expired, I will save the remaining argument for rebuttal unless the court has further questions at this time. All right, thank you. Thank you. Ms. Hoffman? Good morning, may it please the court. I'm Christina Hoffman on behalf of the United States. The court should affirm for two reasons. First, the district court here had jurisdiction under the aid of appeal exception to docket the memorandum opinion that provided its contemporaneous reasoning for the order denying compassionate release, because on these unique facts, none of the purposes of the jurisdiction transferring rule apply. The opinion wasn't a post hoc rationalization, it didn't result in two courts considering the same issue at the same time, it didn't prejudice the defendant, and it conserves judicial resources to consider it. Second, even if the opinion is disregarded, the form order here was sufficient under Chavez-Meza and Hyde, because this was a straightforward case involving a dangerous defendant, recently sentenced by the same judge, who did not point to any post sentencing mitigation evidence, and there was an intuitive reason for the district judge's determination that the 3553 factors did not favor release. Ms. Earnest says Chavez-Meza is not applicable here because it's distinguishable. It dealt with a different situation reducing sentences on a 35A2 or so. How do you respond to that? I think a faithful reading of Chavez-Meza and Hyde requires the court to affirm in this case. In Chavez-Meza, the defendant was convicted of an unviolent drug offense, the guidelines were subsequently lowered by the Sentencing Commission, and the defendant pointed to post sentencing rehabilitative efforts in prison, and the Supreme Court held that given the simplicity of this case and the judge's consideration of the arguments and relevant factors, the form order was sufficient to allow for meaningful appellate review. I think this case is actually less complicated than Chavez-Meza and also less complicated than  held that a similar cursory reference to the 3553 factors was sufficient even though the defendant had committed a nonviolent... Yes, Judge Harris. I'm sorry, because this case seems distinguishable to me for maybe a slightly different reason. Whatever we would say about just a regular form order, that's not what we have here. We have a form order that says on the face of it, this is not my reason. My reason is in the attached document. I don't see how we can review whether that is correct or not without looking at the attached document. What if the attached document says the reason I'm denying compassionate release is because, I'm just trying to think of something clearly, a factual mistake, because this guy committed a murder when he was in prison. It's just not true. How can we sign off on an order that says, by terms, you have my reasoning. My reasoning is in another document. How can we say that's correct if we can't look at the other document? Well, I think that brings me back to my first point, the jurisdictional point, Your Honor. I do think it's very important that the November 23rd... Actually, before we go back to whether we can look at the other document, are you agreeing that whatever is the case as to just your average form order, if what the form order says is, effectively, this is not my reasoning. My reasoning is somewhere else. We cannot sign off on that order without looking at the something else? Or do you think we might be able to sign off on it anyway? I think that it would be somewhat inconsistent to hold both that the district court was deprived of jurisdiction to docket the opinion and also that we can't affirm the form order because it incorporates by jurisdiction. I would concede that if the court is going to say, well, we have to consider the memorandum opinion, then, yes, you wouldn't just want to look at the form order. But I think it would be inconsistent to hold both things, and I did, if I could, Your Honor, want to return to why I think there was jurisdiction to docket this memorandum opinion and why it should be considered. I think it's behind the general rule that notice of appeal transfers jurisdiction to the Court of Appeals. As this court said in Doe v. Public Citizen, which we cited in our 28-J response, the rule is designed, first, to prevent against a situation where you have two courts considering the same issues at the same time, and second, it's designed to prevent district courts from engaging in post-hoc rationalization like you had in Harvey, the Sixth Circuit case that the Court of Appeals did. I think that's an interesting point. If there is an indication by the judge that it was, this memo was authored before the notice of appeal was filed, and yet he did it subsequent, why wouldn't we take him at his word? I mean, why wouldn't that be one of your stronger points? I would say, if you're talking about jurisdiction, is, I mean, aid to jurisdiction, if that might even be some indication, it was aid to public court, but, you know, if there's evidence that he says it was done before, and then the filing of it, I mean, we're not dealing in strict terms in terms of statute of limitations, that sort of stuff on the judge, but there's a jurisdictional question, which is clearly there, for which we've allowed some exceptions, at least an exception, but if he says I've done it before, why doesn't that distinguish this case so that we don't have to reach that question that would say, well, he did it just after, with nothing else? I think if I'm understanding your Honor correctly, I think it is hugely significant that the judge here, Judge Blake, did write and sign this memorandum opinion before filling out the order here. We know that based on four reasons from the record. The opinion was signed on the same day, November 10th, that's JA 190. When you look at the docket entry at the bottom of JA 27, the deputy clerk specifically noted when she docketed the opinion that it was, quote, signed by Judge Catherine C. Blake on 11-10-2020. Third, the order expressly incorporated the opinion by reference, saying a separate memorandum accompanies this order, that's at JA 180, and fourth, the opinion ends with the sentence, a separate order follows, that's at JA 190. So I think the timing of that opinion, I agree, is hugely significant, because what it means is that neither of the purposes of the jurisdiction transferring rule apply. First, there was never a point in time when two courts were considering the same issue at the same time. The appeal wasn't docketed until November 30th, the same day that Judge Blake's opinion was entered. If you look back at JA 27, the docketing of appeal was the very next entry after Judge Blake's opinion. So this case is unlike Doe v. Public Citizen or Harvey, both of which involved the after-briefing had already commenced in the appellate court. Instead, it's more like grand jury proceedings, where the Fourth Circuit said that the district court could issue a post-appeal order, expanding on its prior orders, because it was highly unlikely to result in duplication of effort. Here, but, but counsel, I mean, you can argue, I understand your argument for why, if there were a jurisdictional problem here, the exception might apply, but this case is not like the seal case that you just mentioned, because here the district court did not issue a decision after the divestiture rule had kicked in. The issue, the decision was made before the district court lost jurisdiction. So I'm just, I mean, is it your position that our clerk can't, like, put something in the mail? A district court clerk can't put something in the mail after the Fourth Circuit case? Like, I didn't think the clerk needed jurisdiction to act. Jurisdiction is the power of a judicial officer to make a decision. I, I, I'm just worried about the implications of this. My guess is that clerk's offices do lots of things after, after the divestiture rule kicks in, and I'm very nervous about a decision that would say all of that stuff is now somehow a nullity, unless we can squeeze it into an exception to this rule. No, I, I think your honor is completely right. I think that the jurisdiction transferring rule doesn't apply. You can distinguish it on those grounds as well. It just doesn't apply, period, because in this case, it's, it's really sui generis. You have a clerical error. The, the opinion was already, it already existed on November 10th. It was written on November 10th, and all that happened afterwards was the clerk docketing it, and so we're not in the jurisdiction transferring rule land at all to begin with. But I also think that... And to be, to be clear, counsel, I'm sorry, just one other thing. We're all talking about a jurisdictional rule, but this isn't a real jurisdictional rule, right? This is a claims processing rule. I mean, it's not based on a statute. There's all these exceptions that are made up by judges. I assume this is not a real jurisdictional rule. I think that's right. I think I would describe it as a claims processing rule. I do think in Doe v. Public Citizens, the Fourth Circuit did say that the, the Court of Appeals has an independent obligation to consider the jurisdiction of the, the district court to enter the opinion that they're reviewing, and so in that sense, I think it's important to address it, even though, frankly, it wasn't raised in the, in the appellant's brief. They didn't raise a jurisdictional claim. I do think we still need to address it. I think for the reason that Your Honor pointed out, it doesn't apply in the first place. I think also the purposes behind it don't apply. Clearly, this wasn't a post hoc rationalization. Judge Blake didn't reopen or expand the judgment or develop supplementing, supplemental findings after the notice of appeal had been filed, as in this, the Sixth Circuit case, Harvey, and I think that the clerical error here also makes this case similar to the Fourth Circuit's decision in Little v. Griffith, which is one of the cases discussed in Doe v. Public Citizen, and there, in Little v. Griffith, the district court had jurisdiction to modify an injunction six months after the notice of appeal was filed because it corrected an error in the injunction and saved the Court of Appeals from having to consider an unnecessary issue, and here, similarly, the district court had jurisdiction to correct this ministerial error by docketing the opinion because it prevents this court from, from wasting resources trying to review the order on an incomplete record. Ms. Hoffman, would you concede that, in this case, in these facts, that you need the memorandum here? Without it, you can't, you couldn't, you couldn't do what you can't do. Do you agree with that? No, I don't agree with that, and I do think that we know from- I want you to understand what I said. So, a no means that you think that, as this form suggests, because I thought it was interesting, the form says you don't even have to put anything there. It says, factors considered, and then parentheses, optional. So, all you have to do is say deny. So, under this form, you think that that's all you'd have to do? Well, I don't think we have that situation here. I do think it's a and wrote in there that the 3553 factors did not favor release, and I think, on this record, that was sufficient. We know from Chavez-Mesa and High together that, in the context of compassionate release, when you have a relatively simple case, a bare-bones form order is sufficient. Why do you think this is a- why do you think this case- listen to that. Why do you think this is a simple case? That's under the theory that all you have to do is say, well, 3553 factors, those were the factors we used to sentence you. I still think the sentence I gave you is correct and was appropriate then, and it still is. You think that's all you have to do? I do. Because what's- in Chavez-Mesa, I think you just- you said in reference that I've also looked at mitigating factors and the 30- because 3553 doesn't talk about mitigation, does it? Well, in Chavez-Mesa, the distinction that I was drawing was that in Chavez-Mesa, the defendant actually put forward post-sentence rehabilitation evidence in the form of courses he'd taken in prison and lack of disciplinary infractions in prison. And the Supreme Court said that even in that case, the bare-bones form order was sufficient. So the court in Chavez- the district court in Chavez-Mesa did not address that mitigation, that post-sentence mitigation evidence that the defendant had put forward. The Supreme Court said even there, the form order was sufficient. The distinction here, and it's an important one, is that the defendant here did not put forward any argument relating to post-sentence mitigation evidence at all. And so that's why I think this case is actually less complicated than Chavez-Mesa and fits safely in the rule. It fits safely in the category of cases where a form order was sufficient. This is the same judge who presided over the defendant's sentencing roughly three and a half years earlier, and by the way, also presided over the six-week trial of his co-defendants. So she was intimately familiar with the facts of the case. She knew that the defendant conspired to participate in the affairs of a very violent bloods gang by distributing over a kilo of heroin, over 280 grams of crack cocaine. She knew he sold a gun, offered to sell a machine gun, that he had 100 rounds of ammo and body armor in his house, that he had a long history of similar drug and weapons-related offenses, including this 2006 drug conviction that he had in a range incident where he pulled a gun on another driver. And she knew that he'd only served only about four years of his 10-year sentence. And unlike in McDonald and Martin, the defendant, again, didn't raise any argument based on post-sentencing mitigation evidence. The defendant's only 3553 argument for release, that his offense didn't involve violence or firearms, was patently frivolous based on the record, based on the fact that his arguments were simply belied by the record and didn't require the judge to address them. So I think like in Chavez Meza here, there was an intuitive reason for Judge Blake to deny release. And I think it's also important to keep in mind the background principle that we have from this court's decisions in McDonald, in Martin, and in LaGrie that there's a presumption that the district court sufficiently considered relevant factors in deciding a resentencing motion. So unless there's something in the record indicating the contrary, we presume the judge considered it relevant. This is not a resentencing case. That's what I think, that's the whole of the theory that this is not resentencing. If it was resentencing, that's why you put a great deal of weight in the 3553 factors, because you're looking at the same type thing. Here, for example, is hypothetically, you could just list just a long list of horribles, for example, and the person got 50 years sentenced. But if their reason, for example, for extraordinary and compelling reasons is this, they have stage four cancer and they have already been by a physician scheduled for either palliative care or hospice, what difference will that terrible record mean if the person is going to die in three months? And what they're saying is that I want to be with my family for three months. So you're saying all I have to do is just say, you're a horrible person. If you don't weigh that, how do you really get to extraordinary and compelling? Having found it to be compelling and extraordinary, how do you do it by not balancing those things and just by saying, that's enough, that's what you just told me, you listed all the horrible things about this man's deed. It's almost like that is balanced with, like right now, the counselor says that he's on a walker, so wouldn't that have some impact on his danger, future danger, for example, to other people? If you don't balance that, you would say, I don't care what your situation is now, you're a horrible person, but we said it's you, and I still think you're horrible. But the question is, you found it to be compelling and extraordinary. And just to put this on a form is sufficient. And I guess that's where I was, we're not talking about the, it's clear that memorandum doesn't. I'm not, I'm talking about hypothetical in a sense. Because see to me, you really are holding on to this form is enough, but isn't enough to accomplish what Congress wanted us to do, compassionate release. I completely understand your Honor's concern. And I think that absolutely the court does have to weigh those extraordinary and compelling conditions in the balance when considering the 3553 factors. I think that's right. I agree with your Honor. But I think even if we don't look under the hood at Judge Blake's opinion, I think we know that she found extraordinary and compelling reasons here. The statute says you only get to the 3553 factors to the extent they're applicable. So she wouldn't have gotten there unless she had already determined that the defendant demonstrated extraordinary and compelling reasons. And I think it's implicit that she weighed those in the balance in her order. Of course, I don't want to indulge the fiction too much that we don't have her memorandum opinion because we do have it. And it shows beyond a doubt that she considered the defendant's medical conditions very carefully and weighed them in the balance in analyzing the 3553 factors. Furthermore, Kibble and High make clear that an error at the extraordinary and compelling stage is harmless if the record supports the district court's 3553 determination. So in Kibble, the district court erroneously considered itself bound by the policy statement in 1B.1.13. And in High, the court didn't make any finding as to extraordinary and compelling reasons. And in both cases, the Fourth Circuit held that any error at the extraordinary and compelling stage was immaterial because the district court acted in its discretion in finding that the 3553 factors weighed release. I think that is the situation that we have here as well. And I see that my time is almost up. So unless there are further questions from the court, I would urge the court to affirm first because the district court had jurisdiction to docket this memorandum opinion, which thoroughly addressed the party's arguments in the 3553 factors. And second, because even without the memorandum opinion focusing solely on the district court, the district court has no jurisdiction to docket this memorandum     court had jurisdiction to docket this memorandum of understanding. Thank you. Thank you, Ms. Hoffman. Ms. Ernest, you have time reserved. Thank you, Your Honor. I wanted to reply briefly first to the court's question of whether or not the form alone with the one-sentence explanation was sufficient and bring to the court's attention its recent decision, although unpublished, realizing it's not precedent but persuasive in U.S. v. Scott, in which the court looked at the exact same order form for compassionate release, denial of innocence explanation that exists here, found that that was simply insufficient for this court's review and vacated and remanded on procedural review grounds. So, we feel that that logic is compelling here, that the one sentence that the factors outline in 18 U.S.C. 3582C1A is insufficient to take outside of that analysis. Further, that it does not address the, in any way, how the court considered, and to the extent that it did, the very serious and very relevant litigation factors that Mr. Jenkins put forth in his motion and also in his reply. Turning to the issue of jurisdiction, we would still argue that the memorandum is not reviewable by this court because it was filed after the notice of appeal following on the hypothetical that Judge Harris was discussing with the appellee. At the time that the appeal was entered, the appellant had no idea what was in that memorandum or whether or not it would be a substantial basis or any basis at all for the court's denial. So, I am very sympathetic to an argument that this kind of error could lead to very serious prejudice, as in the Harvey case, when the entire appellate brief had been filed before the memorandum came out. That obviously presents a very serious set of concerns. But here, the memorandum came out, I think it was several months before the brief was filed, right? So, what was the prejudice? That at the time that the notice of appeal was filed, and of course the appellant was appointed counsel so had no control over when briefing would be conducted, he did not know what was in that memorandum. He did not know how to respond to it.  But you don't have to respond in the notice of appeal. You just have to take the appeal, which, to the lawyer's credit, promptly did. And I guess you would already have been on notice, the lawyer already would have been on notice that this isn't about the medical testimony because the judge did specify in the order this was under the 3553A factors. So, I guess, and there were months before the brief was due, so. I'm sorry. I'm sort of missing, just practically speaking, how this was a problem for the defense on appeal. Right. And primarily, the argument is that for a jurisdictional, which we believe that this is, it's not a weighing of the equities. It is a procedural. So, in order to effectuate, you know, the running of justice. In this instance, there were some substantive errors in the memorandum that was filed. For example, both Apelli's briefing and the district court's memorandum rely upon a precedence report, which just didn't exist in this case. There was no precedence report at the time of Mr. Jenkins' sentencing. There was plea and sentence proceeding on the same date. There was not a precedence report at the time. There was something that was called a supplemental report to BOP that was prepared 15 days after the sentencing hearing and is a document that goes to BOP and was not filed with this court until the government's opposition to the motion for compassionate release here. I have a procedural question, at least in terms of the practical effect of this. As I understand it, you maintain that if the trial judge had filed this before the notice of appeal, you wouldn't be arguing about jurisdiction. And the determination of when to file a notice of appeal is on, of course, the appellate. And I suppose it could be done immediately after, or you can take the full prescribed time in which to file it. And if you felt like that the judgment that the court entered was not full or complete, you know, it almost seems like to me it might be malpractice if you didn't file that thing immediately and invest in the jurisdiction to keep it from cleaning it up, rather than waiting the full period of time for the notice of appeal. So I'm getting back to Judge Harris' initial characterization of whether this, in fact, is a jurisdictional question that we are dealing with, or is it dealing with a claims-type situation or procedural matter? And the whole business of aiding the court. I don't know where a case like this would push us to decide on how to handle these kind of cases, because we clearly want to differentiate in the situations where you file a case, and then later on, you come up with, after the briefs have been filed, and there's a time period. But here, none of that seems to be, and as counsel on the other side indicated, Ms. Ernest, not Ms. Ernest, I'm sorry, Ms. Hoffman indicated, you know, the judge did indicate, even beforehand, that this was all taking place. So it's, I'm wondering where we go if a case like this, if we have a rule in your favor of what that means, ultimately, for a trial judge, and the corresponding message it sends to a lawyer who's in that position. If you've got a judgment to hand about a court that's infirm, and you know it, you might want to go ahead and get your notice of appeal to keep them from doing anything to it. But that doesn't seem to be a good way to do a business with the court here. I mean, it seems like we would want the district court to give the explanation, and under circumstances such as this, there's no indication there's any nefarious reason for doing so, and as Judge Harris pointed to, the harm that you point to is more of a procedural, as you say, justice thing, but it's not real harm. Because clearly, it didn't affect writing that brief in this instance. So how do you respond to that? I think that the current case law on this issue, to some extent, allows for what is bothering the court by virtue of the fact that precedence has allowed post-appeal filings by the court shortly, soon after an order that an appeal has taken from has been filed. So in instances such as in the Doe case, which Apelli cites several days after, or when there was an oral decision, and then days after the appeal, that there's a written memorization of that, that sort of seems to take in the sort of clerical missteps that seem to be bothering the court and that the government indicates occurred here. But Harvey makes clear that that exception is when the post-appeal filing by the court is days after, but here we have weeks after, and in Harvey we have weeks after. And at some point, the record needs to be set for the court of appeals to go forward with its appeal in this matter. And here, the district court docketed transfer of the case on November 25th to the court of appeals, and the district court's memorandum with full explanations, it wasn't just procedural, it was quite substantive, was not filed until the 30th. What happened in that intervening three weeks, 20 days is speculative to some extent because in this case, the court didn't specify that this was relating back to the November 10th. I'm sorry, what is it that you think is speculative about what happened in that time? It seems 100% clear that unless you're saying that this judge intentionally backdated a memorandum opinion, which I am assuming you're not saying, but say so if I'm wrong, okay, then why isn't it 100% clear what happened? She decides the case on November 10th. She writes out the order. She writes out the memorandum. They refer to each other, and then for some reason, there's some kind of a mess up at the clerk's office, and only one of them is docketed. But both decisions, both documents are prepared on November 10th. The decision is made on November 10th. What is it that you think is a matter of speculation here? I'll be honest, I'm a little bit concerned. Your brief does refer to the credibility that there should be questions about the credibility of this memorandum, and I guess I'm really pressing you to figure out whose credibility you think is on the line here. So, pardon me, I think that there was somewhat of a misunderstanding. I was speaking hypothetically. If this is the rule that the court establishes, that there could be instances where there is speculation, I am not contesting in this instance. I did not write the brief, so I have never in oral argument questioned the district court's credibility. I was only speaking somewhat as you addressed hypothetically what could happen if this is the rule that the court establishes. Thank you for allowing me to make that clarification, though, I appreciate it. I see that my time has expired. If there are no further questions from the court, I thank you for your time and would request that this court remand. Thank you. Thank you so much, Ms. Ernst and Ms. Hoffman. Ms. Ernst, I note that you are a court opponent, and I want to thank you on behalf of the Fourth Circuit for accepting the appointment, and it's very important to our court to help us to handle these very difficult cases. We appreciate it very much. And Ms. Hoffman, thank you for your able representation of the United States. We can't come down and greet you, but nonetheless, we appreciate your being here, and we thank you so much, wish you well, and be safe. Thank you so much. Thank you very much. And I'll ask the deputy clerk to recess the court. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, James Andrew Wynn, Pamela A. Harris